The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Be seated. Mr. Gordon, whenever you're ready, we'll be glad to hear from you. May it please the Court. Rodney Lucas is asking this Court to vacate the sentence he received from the District Court and to remand the matter for resentencing. He is asking that on two grounds. First, that the sentence was procedurally unreasonable in that the District Court gave him a four-level enhancement for possessing a firearm in connection with another felony offense, which we argue was an erroneous application of that guideline. And secondly, we argue that the upward departure that the District Court gave him from the guideline range the Court had found of 77 to 96 months, giving him a total sentence of 228 months, that substantively that was unreasonable and excessive. And for those reasons, we are asking the Court to vacate the sentence. I would like to talk first about the obstruction finding by the District Court. As we argued in the brief, it is our position that the District Court's finding obstruction under the facts of this case risk converting elements that are present in virtually every felony possession case, an attempt to hide the gun, an attempt to throw the gun away, cases where a person is asked if they are armed or if they have a gun in the car and they say no. If that constitutes another felony offense, then that guideline is going to be applied so broadly that it effectively is going to apply in all cases. Even more importantly, though, for purposes of the language of Section 2.1b6, to say that the gun in this case facilitated the offense of obstruction of justice, we think is stretching the function of the gun almost to its limit. We would argue that this is much closer to a situation like the Blount case, where the person broke into the house and took a gun. And this court said that that was not sufficient to find that the firearm that was taken from the house facilitated the gun. I would argue that if obstruction can apply in this case where a gun is hidden in the refrigerator, then the Blount decision should have come out the other way. In order for this case to be consistent with Blount, the facts here are much closer to taking a gun during a burglary than it is to using the firearm to embolden, to actively employ it in the way that this court has talked about in other cases, linking it to the same in relation to language of Section 924C. So on that basis, we would argue that the court, District Court, erred by applying the four-level enhancement, miscalculated the guidelines, and in spite of the District Court's statement that it would have imposed the same sentence regardless, that this error requires that the court vacate the sentence and remand it for resentencing. I'll be happy to address the Saviano-Matute issue very briefly. Gordon, you make an argument, I think, with respect to this obstruction of justice charge that discarding the firearm in this person's home actually decreased the danger of its use. I think that's what you're saying. That is my argument, and that again would be to say that it's facilitating the commission of another crime. It's not making the situation more dangerous. It's making it less dangerous. Well, I'm not sure that I agree with that. I mean, how does discarding a potentially dangerous weapon without the knowledge of the homeowner or anyone else decrease the danger? I mean, it leaves it open to be used by anyone. That's correct, but the facts in this case are that he revealed where the gun was. Helen Guthrie asked him to, you know, where is the gun, and he told her. Well, the fact that he did it after the fact doesn't negate that there was, at least for a period of time, some element of danger to someone. Yeah, and I would agree with the court on that. I mean, I don't want to say there's no danger, but what I would argue is that hiding the gun in the freezer is less dangerous than having the gun on the person to possibly, you know, employ against pursuers or in that. So I would argue it's less dangerous. Well, he was hiding the gun to avoid detection by law enforcement of the gun, and himself, he knew where the gun was. The law enforcement officers didn't. That's correct. How does it make it less dangerous? I still don't follow. Well, again, all I'm saying, Judge Groh, is that to have the gun out of his possession makes it less dangerous than if he's being threatened with arrest and it's still in his possession. So that would be my contention, that it is less dangerous. I'm still just looking at it, thinking one isolated part of the entire incident. The fact is, still, he's breaking into this person's house with a gun. Well, it was disputed whether he broke into the house. He just opens the doors, you know. Well, but if he enters with the consent of the homeowner, then it's not breaking and entering. It's not an unprivileged entry.  We don't have that finding. The District Court, we proposed bringing our investigator, and the District Court said, thank you, and that was the end of that. I would point out to the Court that the government didn't prove it either. The agent who testified said nothing about whether or not Mr. Lucas had permission or had standing permission from Helen Guthrie to go into the house. So that was not a resolved issue and it was the government's burden to show that. But secondly, You don't really rely on the inference that you're going into somebody else's house. Well, if it's your next-door neighbor, I have a key to my next-door neighbor's house. So it could be a privileged entry. I mean, that is disputed and I would argue not proven by the government. Secondly, I think it's also not proven, as I argued in the brief, it's not proven when he got the bright idea to put the gun in the refrigerator. If we're talking about obstruction of justice here, if he goes into that house because he's just running, he's trying to get away, and then the idea comes to him to put the gun in the freezer, he has not entered with the purpose of committing a felony. So it would not be breaking and entering on that ground either. But we would have to find that the District Court clearly here, not just that we disagree reviewing the case de novo. I mean, that's a very deferential standard. The fact that we might think this is on the border of the limits of this particular enhancement, how does that help? Well, I think that there is not evidence in the record that he made an unprivileged entry. So I think the court could find clear error on that ground. I think the court certainly could find error as a matter of law on the obstruction. And the obstruction really was the one that drove this. I think a fair reading of the record is it was the obstruction that drove the enhancement on that part. If I may briefly address the Saviano-Matute argument, I would like to emphasize that, again, we would argue it would be a misreading of that case to say that it can be invoked by the District Court every time there is a dispute about a guideline application and that it should not function to shield from this court's review arguments that a guideline has been supplied. Hargrove talked about using the assumed error harmlessness inquiry in, quote, appropriate cases. And we would argue that a run-of-the-mill guideline dispute is not an appropriate case for that to be applied. I thought that Hargrove rejected a narrow reading, a narrow reading of the rule. It did reject a narrow reading of the rule. I think it is still too broad to read Hargrove as saying that this, therefore, allows a District Court to invoke, I would give the same sentence as sort of a talisman in every single type of case. You're assuming that that's the case. I mean, it seemed to me that the District Judge in this case was very thoughtful in his analysis that, you know, regardless of if I'd made a mistake in this case with respect to the initial guideline, I've looked at this case very carefully, applied the relevant factors, and the result would be the same. And at least on the face of the record, there seems to be factual support, given your client's less-than-stellar record. I mean, what are we to do now on appeal in this case when the judge has taken the time to explain to us why he would arrive at the same result regardless? Well, you would, you know, if that is the approach that the Court Judge Diaz, then you would look at the substantive reasonableness of the sentence, because I think it's undisputable that Saviano, Matute, and Hargrove don't talk about substantive reasonableness. Those cases are about procedural reasonableness. The substantive reasonableness cannot be unreviewable because the Court says it would review the same sentence. If this Court were to find that the upper departure was excessive, the Court could not impose the same sentence on remand, would be my argument, so that the Court should therefore look at the substantive reasonableness in that regard. Let me add. Yes, sir. I understand the danger that you foresee could happen if judges were to just start all of a sudden saying in every case, you know, well, I would have given the same case anyway and effectively making it unreviewable. But my experience is that's not turned out to be the case, that it's really a rare instance where we would see a judge making a statement like this. Does that affect the validity of your concern? Your Honor, I would say it is my experience from the field that it is not rare, that it is happening with more than a rare frequency, and that it is happening in cases where the only issue is the guideline calculation or the applicability of the guideline. Is that outside the Eastern District? That I don't know. I practice in the Eastern District, and that's all I can speak to. I would just very briefly on that, Judge Traxler. Again, the Supreme Court has emphasized, and it's not cited in the brief, of course, but because it came out in June, but as recently as the Pew case from the Supreme Court, where they, again, talk emphatically about the anchoring effect of the guidelines and how important it is for the District Court to correctly calculate the guidelines. And, indeed, they talk about how the Supreme Court talks about how a calculation of the guidelines, it both is going to determine the discretion, the manner of the discretion that the District Court uses, and also the review by the appellate court. So, again, the court has, as recently as June, stressed the importance of a correct guideline calculation. So I would ask the court to consider that. With respect to the substantive reasonableness of the sentence, nobody at any point has argued that Mr. Lucas has a stellar record, that he has not had a life of encounter after encounter with the law. What we do argue is that, and the District Court obviously felt that his record was among the most egregious he had ever seen. And our argument simply is that an examination of the convictions doesn't bear that out. It sounds really horrible, and it should, to say that he has 59 convictions. But as we pointed out at sentencing, so many of those were for traffic-related offenses. I counted five second-degree trespass convictions. And with respect to the drug convictions that he sustained, I would argue that the nature of those and the amounts of drugs involved demonstrate that he is basically a street-level dealer in drugs, probably given the assault convictions, he is a person with a drug problem or a substance abuse problem as well. And so I think those are factors that the District Court should consider and should take into consideration before characterizing Mr. Lucas as among the worst of the worst that has ever come before the court. I don't think it's simply as easy as counting up the number of convictions and saying that, therefore, he essentially deserves a consecutive maximum sentence on each count. So on that basis, we would ask the District Court to, or we would ask this court to vacate that sentence. And if the court has no further questions, I thank you. Thank you, Mr. Rogers. Mr. Rogers? Good morning. May it please the Court, my name is Joshua Rogers, and I represent the United States. As an initial matter, we would note that as the District Court recently held in Hargrove, Savion Matute has been broadly upheld, and the District Court did give a reasonable alternative variant sentence. I will not walk through every conviction, but just broadly note, the defendant did in fact have 59 convictions, which included 8 felony drug convictions, a number of violent convictions, and his misdemeanors oftentimes involved firearms. And the District Court did find that the defendant repeatedly violated probation, was exceptionally violent, and a committed drug dealer. And so I think it's difficult to dispute that there was a substantively reasonable sentence as you go through page after page after page of this defendant's convictions, regardless of the fact that there may be a couple of more minor convictions. And therefore, any procedural error is necessarily harmless. But even if it weren't, under 2K2.1b6, the Court had two bases under which to uphold the in connection with another felony offense enhancement. First of all, breaking and entering. The defendant this morning says that there was no evidence that the defendant, that there was evidence that the defendant knew this person that he was going in, or he had permission to go in the home, and there was no evidence to the contrary. In fact, Agent West testified that although Ms. Guthrie knew who the defendant was, there was no evidence that he lived there or that she had a relationship with him. So he did not dispute in his brief the first two elements of breaking and entering. He now does. He focused instead in his brief on whether there was the intent to commit the felony of obstruction of justice. That essentially requires this Court to find the district court clearly erred when in fact what we have is a defendant who was standing with a group, police show up, they're going to ask him a question, and what he does, he only has two bits of contraband on him. It's a firearm and ammunition. He bolts from the group, running from a police officer, breaks into a home, and running being evidence of guilty conscience. And in the very brief period he's got, finds a freezer and puts the gun in there. Isn't that the problem, though? It's just so instantaneous that it's difficult to fathom how someone could generate the intent to commit this offense. Well, I think what's evident... And frankly, from what I could see, the district court didn't really explain that or make any analysis as to how he arrived at that finding. Well, the record speaks to the district court's finding, and this Court can affirm based on anything in the record. And what we have is a defendant who is running and has time to calculate. He breaks into the home with the gun and then, rather than just discarding it, throwing it somewhere, finds a place where it's not likely to be and then asks a very important question when he comes out. What's the problem? What's the problem? Repeatedly asking the police officers, because he knows what the problem is. He had a firearm on his person, and he's hidden it from the police officer. So... Well, I mean, that seems to suggest that the obstruction of justice offense might be more appropriate, but it just seems to me a bit of a stretch to think that this defendant could have calculated all this and formed the intent in such a short period of time. I think that even if this court were to see that as a stretch, it doesn't necessarily mean that it's clear error that the district court found that with these facts. Well, I suppose we don't need to worry about that if we're satisfied that the obstruction of justice enhancement is sufficient. That's correct. Or this court doesn't need to worry about it if it finds that Hargrove answers the question. But with respect to the obstruction of justice, this was a situation where we don't have any argument here that the defendant was trying to hide evidence. No one's disputing the defendant tried to hide the gun when he put it in the freezer. Essentially, what the defendant is arguing is that obstruction in North Carolina shouldn't constitute another felony when a defendant spontaneously ditches a gun. I understood his argument to be that you couldn't use a firearm to facilitate the crime of hiding a firearm. Explain to me how the legal analysis of how having a firearm constitutes obstruction of justice for hiding a firearm and that having it facilitates that. Well, the defendant cited Blount from this court. But Blount has some very interesting language in which it states that the purpose of this particular enhancement is to ensure that the defendant receives a more severe punishment if he commits a separate felony offense that's rendered more dangerous by the presence of the firearm. When defendant, in possession of this firearm, bolted for that home with that firearm in his hand, broke in and looked for a place to hide it, not knowing who was in this residence and running through a residential area. Now, this is an enhancement on this basis that dictated by whether or not he broke in the house. As I understand it, and you can correct me if I'm wrong about this, hiding the gun under this theory is enough. Whether you brought it to somebody's house or you put it under a car, you stick it in a bush, you throw it off a bridge, under that theory, every time somebody does that, they would face an enhancement variance for obstruction of justice. What's different about this defendant is he didn't just dispossess a gun. The hiding didn't happen when he put it in the refrigerator. The hiding happened when he ran from police, is going through a residential area, breaks into the home, and I'm not... No, as I understand it, there are two different bases. One is just simply hiding the gun. The other possible basis would be breaking into the house with the intent to hide the gun. What I'm trying to get you to focus on now is just the fact of hiding the gun, that that's, as I understand it, presented as a basis for the upward variance or the enhancement, whatever. What we would argue is that within that circle of... Within the circle of obstruction is the breaking and entering. We're not arguing that breaking and entering is... Well, let me just ask this. Is hiding a gun a legal basis for obstruction of justice? Simply dispossessing. Simply hiding it. He looks up, he sees a police, he throws it in the bush. Is that obstruction... Would he be facing an obstruction of justice enhancement for doing that? No, Your Honor. However, in this case, if you have someone who's hiding, actually begins outside of a home and he continues to possess a gun, continued possession that is, in fact, dangerous, he's in the course of looking for some place to hide that gun. And as he's doing so, goes into a home, he doesn't know who's on the other side. Anytime someone's got their finger on a trigger, it's dangerous. There is, in fact, a woman in there. And then his hiding involves going through that home, putting in a freezer, and then coming out. We've got a different situation than a man who just runs across a bridge and tosses it in the river. And what have those added elements contributed to the analysis? Danger. Danger. The offense of obstruction of justice has been rendered more dangerous by the presence of that firearm now. Someone who throws a gun... Has that somehow facilitated the commission of obstruction of justice? It has, because it has emboldened, I would say, the man in doing what he's done, pursuant to Jenkins. I mean, he's emboldened in what he's doing. It didn't exist in a vacuum, that moment with the freezer. It was all part of a larger picture. Possessing it for a longer period of time... Correct. ...before he just divested himself of it. Yes, Your Honor. So there are at least three different bases under which the court could uphold the district court's sentence of defendant, including, first, the Hargrove basis, which we first noted, because this was a reasonable alternative variant sentence. Also, the district court found the defendant had broken and entered the home and finally had also, on the basis of obstruction of justice, possessed the firearm in connection with that felony offense. On any three of those bases, this court could uphold the district court's finding, and we would ask the court to do so. Thank you. Thank you. Mr. Gordon? Thank you. I take it from the court's questions. I believe the court understands the issues in this appeal, understands the positions of each of the parties regarding the issues in this appeal. If the court has no further comments... You're one of the few lawyers this week that thought that. I'm sorry? That I understood what they were talking about. So I don't want to stand up here and repeat myself or belabor points, so unless the court has any further questions,  ask the court to vacate Mr. Lucas's sentence and remand him to the district court for resentencing. Thank you. Thank you, Mr. Gordon. We'll come down and greet counsel and then go into the next case.
judges: William B. Traxler, Jr., Albert Diaz, Gina M. Groh